## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANGEL MORALES, | ) | 3:21-CV-1171 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HOUSING AND | ) | |
| URBAN DEVELOPMENT and | ) | September 14, 2022 |
| HARTFORD HOUSING AUTHORITY, | ) | |
| *Defendants*. | ) | |

### ORDER AND RULING ON DEFENDANTS' MOTIONS TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Angel Morales brings this *pro se* action arising from a dispute with Defendants, the Housing Authority of the City of Hartford ("HACH") and the U.S. Department of Housing and Urban Development ("HUD"). Morales and his family were living in a house owned by the City of Hartford and built by HACH through federal funding obtained from HUD. After an administrative proceeding with HUD, Morales filed the present complaint against HACH and HUD. Specifically, he alleges that HACH discriminated against him by refusing to let him buy the house from the City, in violation of Title VI of the Civil Rights Act of 1964 and Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988. While Plaintiff's claims against HUD are less clear, it appears he may be challenging the outcome of the administrative proceeding HUD conducted.

Both Defendants have moved to dismiss. HUD seeks to dismiss all claims against it as barred by the doctrine of sovereign immunity. Alternatively, HUD contends that the complaint fails to state a claim against it because Morales alleges virtually nothing about HUD's involvement in the events at issue. HACH argues that the complaint fails to state a claim for relief against it,

because the claims, as pleaded, are time-barred and inadequately alleged.  For the following reasons, the claims against both Defendants are dismissed.

## I.    FACTUAL BACKGROUND

The facts alleged in the complaint are taken as true for purposes of a motion to dismiss, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint contains relatively sparse factual allegations.  Specifically, it states only:

> Hartford Housing Authority, through federal funding obtain[ed] by the U.S. Department of Housing and Urban Development began to build single family homes in the former Charter Oak Housing Project.

> Plaintiff aver[s] that he and his parents moved in to subject property on or about January 1, 1999.  Plaintiff states that at the time, the former Executive Director of Hartford Housing Authority for the City of Hartford, informed the Plaintiff and the Plaintiff's parents that after renting for five (5) years that they were able to purchase the property located at 49 Margarita Drive, Hartford, Connecticut.  However, Hartford Housing Authority "denied" the purchase of property.

> Plaintiff will present evidence to this honorable court.

ECF No. 1 at 2.

This background is supplemented with the following facts detailed in the administrative decision pertaining to this matter, which HACH submitted to the Court for consideration along with its motion to dismiss.  *See* ECF No. 14-1.  However, the Court declines to take judicial notice of these facts.  Pursuant to Federal Rule of Evidence 201(b), a court may judicially notice a fact only when it is "not subject to reasonable dispute" because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d

66, 70 (2d Cir. 1998).  While it would be proper for the Court to take judicial notice "to establish the fact of" earlier administrative proceedings "and related filings," it cannot take judicial notice of the "truth of the matters asserted" in the other proceeding, as HACH requests here.  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Cabrera v. Schafer*, 178 F. Supp. 3d 69, 72–73 (E.D.N.Y. 2016) (citing cases and explaining the proper scope of judicial notice).  The facts detailed in the administrative decision are therefore simply set forth here as background.

Since 1999, Morales' family has been living in a single-family house in a low-income public housing community in Hartford.  Compl., ECF No. 1, at 2.  The house was built by HACH through federal funding from HUD, and certain HUD regulations dictated who was qualified to live in the house.  ECF No. 14-1 at 16, 19.  Morales alleges that, when his family first occupied the house, they were told by the former Executive Director of HACH that they would be able to purchase the house after renting it for five years.  Compl. at 2.  Morales alleges that his parents were not permitted to buy the house five years later as promised, but that HACH informed them that "they would be 'grandfathered' into a policy where if they passed, [Morales] would be able to remain in the home."  ECF No. 14-1 at 12.

In May of 2019, HACH approved Morales to live in the house as a live-in aide for his mother, the qualified tenant.  *Id.* at 19.  In agreeing to serve as a live-in aide for his mother, Morales certified that he "[w]ould not be living in the unit except to provide supportive services" and was "not included on the lease," nor was he "considered a member of the household[.]"  *Id.* at 15.  Following his mother's death in November of 2020, Morales continued to live in the house and mailed rent checks to HACH.  *Id.*  In February of 2021, HACH sent Morales a letter returning the rent checks and directing him to vacate the house immediately because he was not a qualified

tenant. *Id.* at 16. Upon receipt of this letter, Morales spoke to an attorney at HACH and requested to buy the house, but HACH denied the request. *Id.* at 13.

Soon thereafter, Morales filed a complaint with HUD's Office of Fair Housing and Equal Opportunity, contending that he should be permitted to buy the house as his family was previously promised. *Id.* at 19. Morales further alleged that HACH's refusal to sell him the house was discriminatory and retaliatory in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), and Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988, 42 U.S.C. § 3601 *et seq.* (the "FHA") (together, the "Civil Rights Acts"). ECF No. 14-1 at 5. HUD investigated Morales' allegations pursuant to 24 C.F.R. § 1 *et seq.*, implementing Title VI, and 24 C.F.R. § 103 *et seq.*, implementing the FHA. HUD ultimately concluded that HACH did not discriminate or retaliate against Morales or otherwise fail to comply with federal civil rights law. ECF No. 14-1 at 20–22. HUD also found that Morales' retaliation claim failed because it was time-barred and alleged neither protected activity nor a causal link between the alleged protected activity and the adverse action. *Id.* at 21.

Following resolution of the administrative proceeding, Morales filed the present complaint against HACH and HUD, claiming that they violated the Civil Rights Acts. Compl. at 1–3. Specifically, he alleges that Defendants discriminatorily applied "terms," "conditions," and "privileges"; discriminatorily refused to rent, sell, negotiate, and "deal" with respect to the subject property; denied him housing; and discriminated against him due to his criminal history. *Id.* He also alleges that HACH retaliated against him because he had previously complained about an employee. *Id.* He seeks a Court order directing Defendants to sell the house to him. *Id.* at 4.

Defendants filed separate motions to dismiss. ECF Nos. 13, 19. HUD moves to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that

Morales' claims against it are barred by the doctrine of sovereign immunity.[1]  ECF No. 19.  HACH argues that Morales' allegations are time-barred and fail to state a claim against it upon which relief can be granted based on the sparse factual allegations of the complaint.  ECF No. 13.  For his part, Morales filed two opposition briefs, although they do not address Defendants' specific arguments.  ECF Nos. 26, 28.  For the reasons explained below, the Court grants both motions to dismiss.

## II.     HUD's MOTION TO DISMISS

### A.   Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "Issues of sovereign immunity are properly addressed in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Gristede's Foods, Inc. v. Unkechuage Nation*, 660 F. Supp. 2d 442, 464 (E.D.N.Y. 2009) (citing *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 84 (2d Cir. 2001)).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Makarova*, 201 F.3d at 113.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  While "[t]he doctrine of sovereign immunity is jurisdictional in nature," *Makarova*, 201 F.3d at 113, the issues of subject matter jurisdiction and sovereign immunity are "nonetheless

---

[1] In the alternative, HUD also moves to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim against it because all allegations of discrimination pertain to actions taken by HACH, not HUD.  Because the Court agrees that Morales has not satisfied his burden to identify a waiver of HUD's sovereign immunity, it does not reach this argument.  In the event that Morales moves to amend his complaint, HUD may reiterate its argument that any proposed amendments likewise fail to state a claim.

wholly distinct," *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999) (citation and internal quotation marks omitted). *See also C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 903 F.2d 114, 117 (2d Cir. 1990) ("At the outset, we observe that an action against the sovereign is properly before the district court only if there was both a grant of subject matter jurisdiction and a valid waiver of sovereign immunity. . . . We consider these issues separately."). Thus, "[i]n any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity." *Presidential Gardens Assocs.*, 175 F.3d at 139.

Because HUD is "an executive agency of the federal government," the principles of sovereign immunity shield it from suit. *Almeida v. U.S. Dep't of Hous. & Urb. Dev.*, No. 08 Civ. 4582 (SCR), 2009 WL 873125, at \*2 (S.D.N.Y. Feb. 11, 2009). *See also Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994) (noting that, "[a]bsent a waiver, sovereign immunity shields the Federal Government *and its agencies* from suit" (emphasis added)); *Binder & Binder, P.C. v. Colvin*, 818 F.3d 66, 70 (2d Cir. 2016) (quoting *Meyer*); *United States v. Yonkers Bd. of Educ.*, 594 F. Supp. 466, 468 (S.D.N.Y. 1984) ("Of course, sovereign immunity applies equally to claims . . . brought against federal agencies regarding their official functions.").

The sovereign immunity of the United States may only be waived by a federal statute. *Presidential Gardens Assocs.*, 175 F.3d at 139. Specifically, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied. . . . Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). The substantive claim must fall within the scope of the waiver. *See Geronimo v. Obama*, 725 F. Supp. 2d 182, 185 (D.D.C. 2010). Similarly, the waiver must unambiguously

extend to the particular remedy sought, whether monetary or equitable. *See Lane*, 518 U.S. at 192

(citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992)).

> B. Discussion

Although Morales bears the burden of "establishing that [his] claims fall within an

applicable waiver" of sovereign immunity, *Makarova*, 201 F.3d at 113, neither his complaint nor

his opposition brief articulates a basis for a waiver of sovereign immunity. In an effort to construe

his *pro se* claims with the required liberality, *see Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir.

2010), the Court considers and rejects two possible bases, under the Civil Rights Acts and the

Administrative Procedure Act.[2]

> 1. The Civil Rights Acts

The substantive statutes under which Morales' causes of action arise contain no express

waiver of sovereign immunity with respect to any of his claims against HUD. Morales' claims

arise from several provisions of the Civil Rights Acts of 1964 and 1968, all of which generally

protect individuals against discriminatory rental and sale practices in public and private housing.

*See* 42 U.S.C. § 2000d (codifying Title VI); 42 U.S.C. §§ 3604(a), (b) (codifying §§ 804(a) and

---

[2] The Court also briefly mentions a third possible basis—the National Housing Act, 12 U.S.C. § 1702 (the "NHA"). Relevant here, the NHA waives HUD's sovereign immunity with respect to claims "alleging direct violations by HUD of the substantive provisions of the Housing Acts themselves." *Yonkers*, 594 F. Supp. at 470. *See also Fed. Hous. Admin., Region No. 4 v. Burr*, 309 U.S. 242, 244 (1940) (noting that the NHA expresses Congress' consent to suit). However, courts have interpreted the narrow scope of the NHA's waiver of sovereign immunity as encompassing only "commercial suits by contractors relating to the construction of housing projects financed under the [NHA]," or, more generally, "suits relating to HUD's commercial transactions." *Selden Apts. v. U.S. Dep't of Hous. & Urb. Dev.*, 785 F.2d 152, 157 (6th Cir. 1986). *See also Yonkers*, 594 F. Supp. at 471–72 (citing *Burr* for the rationale that "actions brought under § 1702 typically have involved contractual or quasi-contractual claims relating to the construction of housing projects financed under the NHA" because that statutory scheme "launched a governmental agency into the commercial world"). Here, Morales has not alleged anything to suggest that his claims relate to HUD's commercial transactions. Other courts have concluded that the waiver provision of § 1702 does not extend to civil rights actions. *E.g.*, *Selden Apts.*, 785 F.2d at 156, 158 (noting that the plaintiff's civil rights claims "were not grounded on allegations that HUD breached legal duties under the [NHA]," but rather were "based on allegations that HUD engaged in racial discrimination"). Thus, the Court cannot conclude that Morales' claims fall within the limited scope of the waiver of sovereign immunity expressed in the NHA.

(b), respectively, of Title VIII, as amended by the FHA); 42 U.S.C. § 3617 (codifying § 818 of Title VIII, as amended by the FHA).[3]  At least two cases have concluded that these provisions of the Civil Rights Acts contain no express waiver of sovereign immunity, which would be required for Morales' suit against HUD to continue.  *See Lane*, 518 U.S. at 192 ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied[.]").

First, in *Dorsey v. United States Department of Labor*, 41 F.3d 1551, 1552–53 (D.C. Cir. 1994), the plaintiff claimed that the U.S. Department of Labor discriminated against him on the basis of his disability in violation of the Rehabilitation Act, 29 U.S.C. § 794, when administering an educational program.  That statute provided that an action under it would be governed by the procedures set forth in § 2000d of Title VI.  *Id.* at 1554.  The D.C. Circuit ultimately affirmed the district court's dismissal of the action as barred by sovereign immunity, reasoning that the plaintiff failed to identify explicit language in Title VI, or the Rehabilitation Act, waiving the government's sovereign immunity.  *Id.* at 1555.  Similarly, in *Boyd v. Browner*, 897 F. Supp. 590, 591 (D.D.C. 1995), the plaintiffs claimed that the U.S. Army Corps of Engineers coerced them into selling their chemically contaminated properties for unfairly small compensation in violation of § 3604 of the FHA.  The district court, applying *Dorsey*, concluded that the FHA did not unambiguously waive the federal government's sovereign immunity, and thus dismissed the action.  *Id.* at 595.  The district court's judgment was affirmed in an unpublished memorandum by the D.C. Circuit.  No. 95-5361, 1996 WL 678614 (D.C. Cir. Oct. 29, 1996).

---

[3] Specifically, Morales' claims arise from four provisions of these Acts.  Title VI, 42 U.S.C. § 2000d, prohibits any program receiving federal funding from discriminating against or denying benefits to any person on account of race or national origin.  The FHA, 42 U.S.C. § 3604(a), makes it unlawful to refuse to sell, rent, or negotiate for the rental or sale of a dwelling because of, among other things, race and national origin.  Similarly, § 3604(b) makes it unlawful to discriminate against any person in the sale or rental of a dwelling on account of, among other things, race and national origin.  Finally, § 3617 makes it unlawful to retaliate against a person for enforcement of the rights protected by § 3604.

Like the plaintiffs in *Dorsey* and *Boyd*, Morales can point to no provision of the Civil Rights Acts that provides an express waiver of the federal government's sovereign immunity pertaining to claims arising under those Acts. Accordingly, the Civil Rights Acts cannot themselves provide a basis for the waiver of sovereign immunity required for Morales to maintain his claims against HUD.

### 2.  The Administrative Procedure Act

In addition, the Court considers whether the Administrative Procedure Act, 5 U.S.C. § 702 (the "APA"), contains a waiver of sovereign immunity that encompasses Morales' claims. That statute provides for judicial review of a final agency action and a waiver of sovereign immunity when: (1) a plaintiff "states a claim that a federal agency or officer failed to act as required in an official capacity," (2) the plaintiff seeks relief other than monetary damages,[4] and (3) "there is no other adequate remedy in a court." *Rowe v. United States*, 633 F.2d 799, 801 (9th Cir. 1980); *C.H. Sanders Co.*, 903 F.2d at 119 (discussing *B.K. Instrument, Inc.*, 715 F.2d at 724–27); *Doe v. United States*, 853 F.3d 792, 799 (5th Cir. 2017) (holding that § 702 requires an "agency action" as that term is defined by the APA); 5 U.S.C. §§ 702, 704, 551(13).

Although Morales' complaint makes no reference to the APA, this is not fatal to his claims against HUD because "the APA's waiver of sovereign immunity is available to all who satisfy the

---

[4] As an initial matter, HUD's motion does not discuss whether Morales' complaint requests equitable or monetary relief. His desired remedy—a Court order directing Defendants to sell him the home at issue, Compl. at 4—appears on its face to be equitable. Several circuit courts have cautioned that a plaintiff cannot avoid jurisdictional or sovereign immunity defects "by framing a complaint to appear to seek only injunctive, mandatory or declaratory relief against government officials when the result would be the equivalent of obtaining money damages." *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727 (2d Cir. 1983). *See also Jaffee v. United States*, 592 F.2d 712, 715, 719 (3d Cir. 1979) (concluding that the plaintiff's request for the government to provide and pay for medical care was effectively a claim for money damages and thus did not fall within the APA's waiver of sovereign immunity); *Armendariz-Mata v. U.S. Dep't of Justice, Drug Enf't Admin.*, 82 F.3d 679, 682 (5th Cir. 1996) (concluding that the plaintiff's request "for either the return of his property or its value" could be fulfilled only in the form of monetary damages, given that the property had been forfeited and could not be returned, and thus the claim did not fall within the scope of the APA's waiver of sovereign immunity). However, the Court here need not decide whether Morales' requested relief is properly monetary or equitable in nature because sovereign immunity nevertheless bars his claim.

applicable statutory criteria." *Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 142 (D.D.C. 2015) (Jackson, J.) ("[A] suit need not have been brought pursuant to the APA in order to receive the benefit of that statute's sovereign immunity waiver[.]").   Nevertheless, the Court notes that Morales has not adequately alleged an agency action or other failure to act as required by HUD. His sparse allegations center on HACH's allegedly discriminatory refusal to sell him the house and retaliation for a prior complaint.  He "cites no agency action, inaction or involvement at all." *See Geronimo v. Obama*, 725 F. Supp. 2d 182, 186 (D.D.C. 2010).  Presumably, Morales named HUD as a defendant as a means to challenge its determination that HACH did not violate Title VI and the FHA.  *See* 5 U.S.C. § 551(13) (defining "agency action" as including an agency's denial of relief or "failure to act").  *See also* ECF No. 14-1 at 19; ECF No. 28 at 3.  Although it is far from clear that Morales' complaint adequately raises a challenge to HUD's determination, the Court will proceed to consider whether such a challenge would fall within the scope of the APA's waiver of sovereign immunity.  This inquiry is different for the two Civils Rights Acts at issue.

a.    Title VIII & the FHA

As explained above, the FHA, which amends Title VIII, prohibits discrimination and retaliation in the rental and sale of public and private housing.[5]  *See generally* 42 U.S.C. §§ 3604,

---

[5] At a higher level of generality, the FHA establishes a federal policy "for fair housing throughout the United States," and imposes on HUD obligations to, among other things, administer its programs "in a manner affirmatively to further" that policy.  42 U.S.C. §§ 3601, 3608(e)(5).  *See also N.A.A.C.P. v. Sec'y of Hous. & Urb. Dev.*, 817 F.2d 149, 155 (1st Cir. 1987) (noting that the FHA "imposes upon HUD an obligation to do more than simply refrain from discriminating (and from purposely aiding discrimination by others)"); *Otero v. N.Y.C. Hous. Auth.*, 484 F.2d 1122, 1133–34 (2d Cir. 1973) (acknowledging that the FHA was "designed primarily to prohibit discrimination" regarding private housing "and to provide federal enforcement procedures for remedying such discrimination," but also noting that "[a]ction must be taken to fulfill, as much as possible, the goal of open, integrated residential housing patterns"). Courts have held that judicial review under the APA is available for HUD decisions alleged to violate this affirmative obligation.  *See N.A.A.C.P.*, 817 F.2d at 158; *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 25 (D.D.C. 2018). However, such claims tend to challenge the availability of low-income housing in a given area, rather than a discrete dispute regarding a particular dwelling.  As noted, Morales' complaint makes no reference to HUD or its obligation to affirmatively promote the development of affordable and nondiscriminatory housing communities; therefore, it cannot be construed to claim that "HUD has failed to administer its programs in a manner that affirmatively furthers fair housing."  *See Tex. Low Income Hous. Info. Serv. v. Carson*, 427 F. Supp. 3d 43, 48–49 (D.D.C. 2019).

3617; *supra* note 3.  There are two mechanisms for enforcement of these provisions of the FHA: civil litigation and administrative procedures.   First, a person who has been subject to discrimination or retaliation in violation of the FHA can initiate a civil action in federal district court directly against the alleged perpetrator pursuant to 42 U.S.C. § 3613(a).  The civil action is available irrespective of the status of any administrative procedures.  *Id.* § 3613(a)(2).  *See also Marinoff v. U.S. Dep't of Hous. & Urb. Dev.*, 892 F. Supp. 493, 496 (S.D.N.Y. 1995) (noting that the private cause of action against a perpetrator of discriminatory housing practices is available "[r]egardless of whether or not HUD determines that reasonable cause exists"), *aff'd*, 78 F.2d 64 (2d Cir. 1996); *Turner v. Sec'y of U.S. Dep't of Hous. & Urb. Dev.*, 449 F.3d 536, 540 (3d Cir. 2006) (noting that the FHA "authorizes private suits directly against perpetrators of allegedly discriminatory practices, even if, as here, HUD renders a determination that there was no reasonable cause to believe that there had been discrimination").  However, this action may be brought against only the alleged perpetrator of discrimination, not HUD.  The Court separately considers Morales' claims against HACH, the alleged perpetrator of discrimination, below.  As principles of sovereign immunity to not apply to HACH, the Court need not address that issue with respect to HACH's motion to dismiss.

Second, a person who has been subject to discrimination or retaliation can file a complaint with HUD pursuant to 42 U.S.C. § 3610(a), which triggers the administrative procedures outlined in 24 C.F.R. § 103.10 *et seq.*  The procedures permit HUD to attempt to facilitate a settlement between the parties.  *Id.* § 103.300.  If no settlement is reached, HUD completes an investigation and determines whether, based on the totality of the factual circumstances, "reasonable cause" exists "to believe that a discriminatory housing practice has occurred."  *Id.* § 103.400(a).  If HUD concludes that reasonable cause exists, then the agency must issue a charge on behalf of the

complainant pursuant to § 103.405.  *Id.* § 103.400(a).  If HUD concludes that no reasonable cause

exists, then the agency must dismiss the complaint.  *Id.  See also Marinoff*, 892 F. Supp. at 495–

96 (outlining the administrative enforcement procedures).

However, there is no way to appeal HUD's reasonable cause determination in federal

district court pursuant to the APA.  The APA allows suits to remedy agency action only when

"there is no other adequate remedy in a court."  5 U.S.C. § 704.  Numerous courts have held that

the APA specifically precludes judicial review of HUD's reasonable cause determination because

the private right of action against the alleged perpetrator of discrimination provided by the FHA

constitutes an "adequate remedy in a court."  *Godwin v. Sec'y of Hous. & Urb. Dev.*, 356 F.3d 310,

312 (D.C. Cir. 2004) (holding that "the private action authorized by FHA . . . constitutes an

adequate alternative remedy, rendering judicial review unavailable under the APA"); *Turner*, 449

F.3d at 540 (holding that the FHA's private cause of action against the alleged perpetrator of

discriminatory practices provided the plaintiff with an adequate remedy, thus precluding judicial

review under the APA); *Marinoff*, 892 F. Supp. at 496 ("Because [the FHA] allows a complainant

to proceed in federal court against the perpetrator of the discriminatory practice(s) even if HUD

determines that no reasonable cause exists to believe that a discriminatory housing practice has

occurred . . . the plaintiff has a reasonable alternative and therefore review under the APA is not

available.").

Given that the APA does not permit judicial review of HUD's reasonable cause

determination, any claim Morales is stating on this ground fails, and the Court need not reach the

question of whether there has been a waiver of sovereign immunity under the APA.[6]  Thus, the Court must dismiss Morales' FHA claim against HUD with prejudice.

b.    Title VI

Title VI prohibits discrimination in the effectuation of any program receiving federal funds. 42 U.S.C. § 2000d.  It instructs the relevant agencies to promulgate regulations governing the disbursement of federal funds consistent with the objectives of Title VI, *id.* § 2000d-1, which HUD has done through 24 C.F.R. § 1 *et seq.*  Those regulations require certain assurances and compliance records by recipients of HUD funding, as well as periodic compliance reviews by HUD officials.  *Id.* §§ 1.5–1.7.  Relevant here, a person who has been subject to discrimination in violation of Title VI can file a complaint with HUD against the funding recipient, triggering an administrative investigatory proceeding.  *Id.* § 1.7.  As with the proceedings under the FHA, HUD is authorized to use informal means to attempt to correct the recipient's noncompliance.  *Id.*  If those attempts are not successful, HUD may employ any means authorized by law to effectuate the compliance of the funding recipient, such as by terminating the federal funding or referring the recipient to the Department of Justice to initiate enforcement proceedings.  *Id.* § 1.8.

Title VI expressly provides that an agency action taken pursuant to that agency's regulations implementing the statute is subject to judicial review.  42 U.S.C. § 2000d-2. Accordingly, at least one court in this circuit has held that HUD's determination regarding a funding recipient's Title VI compliance is subject to judicial review under the APA.  *See Jones v. Tully*, 378 F. Supp. 286, 291–92 (E.D.N.Y. 1974), *aff'd sub. nom. Jones v. Meade*, 510 F.2d 961

---

[6] The Court notes that judicial review pursuant to the APA is precluded irrespective of Morales' ultimate success on his private cause of action against HACH.  *See Turner*, 449 F.3d at 541 (noting that the plaintiff "ha[d] not been deprived of her 'adequate remedy' merely because the district court . . . dismissed her complaint").  Accordingly, the merits of HACH's motion to dismiss, ECF No. 13, do not affect the Court's analysis of whether HUD has waived sovereign immunity under the APA.

(2d Cir. 1975).  Consequently, courts have reasoned that the APA's waiver of sovereign immunity encompasses an action challenging HUD's determination regarding a funding recipient's compliance with Title VI.[7]  *See Selden Apts.*, 785 F.2d at 157–58; *Yonkers Bd. of Educ.*, 594 F. Supp. at 472–73.

To the extent Morales seeks to challenge HUD's determination that HACH, a recipient of federal funding, is in compliance with Title VI, such challenge would appear to fall within the scope of the APA's waiver of sovereign immunity.  However, the Court cannot construe Morales' complaint as raising such a challenge.  As noted, Morales' bare-bones complaint makes absolutely no mention of HUD, other than listing it as a defendant.  Even reading Morales' filings "to raise the strongest arguments they suggest," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citation and internal quotation marks omitted), the complaint cannot be construed to contend that HUD improperly permitted HACH to discriminatorily deny him the benefits of its low-income housing program.  In addition, while his requested remedy appears to be equitable in nature, it is not the type of equitable remedy contemplated by a judicial review of HUD's Title VI compliance determination.  The consequence of a funding recipient's noncompliance with Title VI is generally the termination or suspension of the recipient's funding—or a substitute sanction, such as referral to the Department of Justice for an enforcement proceeding.  *See* 24 C.F.R. § 1.8.  Morales requests no such remedy; rather, he wants the Court to direct HACH to sell him the house at issue.  The

---

[7] The court in *Yonkers* cited *Jones v. Tully* for the proposition that "*[b]oth* title VI of the Civil Rights Act of 1964 and [the FHA] are covered by" § 2000d-2 of Title VI.  *Yonkers Bd. of Educ.*, 594 F. Supp. at 472 n.11 (emphasis added).  However, *Jones v. Tully* concerned HUD's allegedly discriminatory actions in planning a housing project, and the claims substantially fell within Title VI rather than the FHA.  *See Tully*, 378 F. Supp. at 287.  Also, and notably, the FHA contains no provision comparable to § 2000d-2 making HUD's reasonable cause determination pursuant to that statute subject to judicial review under the APA.  Accordingly, the Court considers each Civil Rights Act independently and, as explained above, concludes that the APA's waiver of sovereign immunity does not apply to an FHA claim regarding HUD's reasonable cause determination.

Court cannot construe such a request as falling within the scope of equitable remedies that would be available following a judicial review of HUD's Title VI compliance determination.

Accordingly, the Court dismisses Morales' Title VI claim against HUD, without prejudice to repleading a claim that could fall within the APA's waiver of sovereign immunity, such as a challenge to HUD's determination that HACH, a recipient of federal funding, is in compliance with Title VI.

## III.     HACH's MOTION TO DISMISS

HACH has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that Morales' allegations fail to state a claim for which relief can be granted.  HACH claims that certain of Morales' claims are time-barred and that others are not stated in sufficient factual detail to survive.  Because the Court agrees with HACH's latter argument, it grants HACH's motion to dismiss.

### A.   Legal Standard

When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins.*

*Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  "*Pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

B. Discussion

To begin, Morales' complaint states very few factual allegations to support the claims he is pursuing in this matter.  As described above, Morales' factual allegations relate only to he and his parents moving into the subject property on or about January 1, 1999, and allegedly being promised they could purchase the home after renting for five years.  Compl. at 2.  At some point, Morales alleges, HACH "denied the purchase" of the property.  *Id.*  In the supporting facts section of his complaint, Morales provides a list of seven items:  (1) "[d]iscrimination in terms, conditions, privileges"; (2) "[d]iscriminatory refusal to rent"; (3) "[d]iscriminatory refusal to sell and negotiate for sale"; (4) "[d]iscriminatory refusal to deal"; (5) "[o]therwise deny or make housing available; (6) "[d]iscriminatory due to Morales' prior convictions"; and (6) "retaliation."  *Id.* at 3.  In the causes of action section of the complaint, Morales lists the following:  "Section[s] 804(a), 804(b) and 818 of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988. Title VI of the Civil Rights Act of 1964."  *Id.*

Morales' claims, as currently pleaded, fail because they lack any factual detail. Morales has failed to set forth any facts from which the Court could plausibly infer, for instance, that he was discriminated against based on his membership in any protected class or retaliated against based on any protected activity, as would be required to state claims under either of the Civil Rights Acts. *See* 42 U.S.C. §§ 3604(a) & (b) (codifying Sections 804(a) and 804(b) of Title VII and making unlawful various forms on housing discrimination "because of race, color, religion, sex, familial status, or national origin"); 42 U.S.C. § 2000d (making unlawful discrimination on the basis of race, color, or national origin in any federal program or activity receiving federal financial assistance). Nor has Morales alleged any facts suggesting coercion, intimidation, threatening, or interference with his rights under the FHA. *See* 42 U.S.C. § 3617 (codifying Section 818 of Title VIII). Even reading Morales' complaint with the liberality required for *pro se* complaints, the Court cannot find that its threadbare allegations state a plausible claim for relief in their current form.

In light of this holding, the Court need not decide HACH's argument that the complaint should be dismissed as time-barred, but it notes the following for the parties' benefit. A statute of limitations defense is most often pleaded as an affirmative defense and often requires a factual inquiry beyond the face of the complaint, though a defendant may raise the statute of limitations in a Rule 12(b)(6) motion when the dates in a complaint show that an action is barred by a statute of limitations. *Chisholm v. United of Omaha Life Ins. Co.*, 514 F. Supp. 2d 318, 324 (D. Conn. 2007). Here, the face of the complaint suggests that any allegedly discriminatory actions took place around January 1, 2004, when HACH refused to let Morales' family purchase the property in contradiction to its alleged promise five years earlier. HACH contends that, because any actions in 2004, took place seventeen years before Morales brought the present complaint, his complaint

is barred by the applicable statutes of limitations, which impose a two-year limitation period for FHA claims and a three-year limitation period for Title VI claims. But Morales' complaint and HACH's answer in the administrative proceeding before HUD, submitted by HACH in support of its motion to dismiss, suggest that Morales made an offer to purchase the home in or around March of 2021, that was subsequently rejected by HACH. *See* ECF No. 14-1 at 13. Although the Court expresses no opinion on this issue at this time, it notes that a factual question may remain as to whether Morales' claims against HACH are barred by the statute of limitations.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that Morales has failed to identify an applicable waiver of HUD's sovereign immunity and has failed to state a claim for relief against HACH. Accordingly, HUD's motion to dismiss, ECF No. 19, is GRANTED with prejudice with respect to the FHA claim, and without prejudice with respect to the Title VI claim. HACH's motion to dismiss, ECF No. 13, is GRANTED without prejudice.

If Morales desires to file an amended complaint correcting the deficiencies identified in this Order, specifically regarding his Title VI claim against HUD and his claims against HACH, he must do so by **October 14, 2022.** If no amended complaint or motion to amend is filed by the deadline, the Clerk is directed to convert the dismissals without prejudice to dismissals with prejudice, enter judgment in favor of Defendants, and close this action.

In light of this ruling, Morales' "motions in opposition" to HACH's discovery requests, ECF Nos. 34 and 35, are denied as moot.


**SO ORDERED** at Hartford, Connecticut, this 14th day of September, 2022.


 */s/ Sarala V. Nagala*⎯⎯⎯⎯⎯⎯⎯
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE